# United States District Court
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AVI S. ADELMAN,<br>Plaintiff,<br><br>v.<br><br>DALLAS AREA RAPID TRANSIT and<br>STEPHANIE BRANCH,<br>Defendants. | § § § § § § § § § | CASE NO. 3:16-cv-2579-S |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Stephanie Branch's ("Branch") Motion for Summary Judgment [ECF No. 45], Defendant Dallas Area Rapid Transit's ("DART") Motion for Summary Judgment [ECF No. 48], and Plaintiff Avi S. Adelman's ("Adelman") Motion for Partial Summary Judgment [ECF No. 51]. For the reasons stated below, the Court grants in part and denies in part Branch's motion, grants in part and denies in part DART's motion, and denies Adelman's motion in its entirety.

## I. BACKGROUND

Per Special Order 3-318, this case was transferred from the docket of Judge Jane J. Boyle to the docket of this Court on March 8, 2018.

Plaintiff Adelman is a freelance journalist and has worked in journalism for many years. Pl.'s Br. 2. His work includes publishing a neighborhood blog and providing photographs to media outlets. *Id.* As a freelance journalist, Adelman regularly takes photographs of crime scenes and medical scenes to use on his own website or social media accounts or to sell to other media outlets. *Id.* at 2-3.

On February 9, 2016, Adelman states that he was listening to his police scanner and heard a call for Dallas Fire Rescue ("DFR") to respond to a K2 overdose victim at DART's Rosa Parks Plaza ("RPP"). *Id.* at 3. Adelman claims that went to RPP and noticed a man lying on the ground being attended to by DFR paramedics. *Id.* He then began to photograph the scene. *Id.* According to Adelman, a uniformed DART police officer, Defendant Branch, noticed Adelman taking photographs and positioned herself between Adelman and the medical scene. *Id.* at 4. Branch's digital voice recorder and Adelman's video camera captured the exchange between Branch and Adelman. Def. DART's Br. 2-7. Branch claims she approached Adelman and asked him to stop photographing because of the perimeter she established for the incident and because she believed that HIPAA applied in the situation. *Id.* at 2. According to the transcripts, Branch asked Adelman to leave DART property nine times and for his identification four times. *Id.* at 2-7. Adelman alleges that he insisted that he was within his constitutional rights, and refused to leave or give Adelman his identification. Pl.'s Br. 6.

Branch subsequently arrested Adelman for criminal trespass under Penal Code § 30.05. Def. DART's Br. 7. According to Adelman, he spent 20 hours in jail before he was released after posting bail. Pl.'s Br. 7.

On February 12, 2016, DART Chief of Police James Spiller ("Spiller") initiated an internal affairs investigation of Adelman's arrest because Branch's audio recording indicated the reason she made contact with Adelman was due to him taking pictures of a person receiving medical treatment by DFR. Def. DART's Br. 7. On February 16, 2016, Chief Spiller wrote a letter to Adelman informing him that the criminal trespass case would be dismissed and that "…a review of the arrest revealed that it was not consistent with DART police policies and directives…Although the officer's actions appear to be within her authority, they are not in line

with the department directives concerning photography on DART property." *Id.* at 8 (quoting Def. DART's App. 83).

DART also conducted a formal review, concluding, "There is sufficient evidence that shows Officer Branch did violate DART Police procedure when she failed to gather enough articulable facts and did not establish probable cause to effect the arrest." *Id.* at 8 (quoting Def. DART's App. 9-10). DART also found that Branch made 23 false or inaccurate statements in her incident report, including her statement that Adelman was within a few feet of DFR paramedics and that DFR instructed her to keep Adelman back. Pl.'s Br. 9 (citing Pl.'s App. 54-57). Based on the findings of the formal review, DART Lieutenant Lindsay recommended that Branch be terminated; Spiller, however, rejected the recommendation and instead decided to suspend Branch for three days. *Id.* (citing Pl.'s App. 68).

Adelman filed suit against DART and Branch on September 8, 2016, alleging violations of his First, Fourth, and Fourteenth Amendment rights.

## II. LEGAL STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, he "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot*

*v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. ANALYSIS

Only the following summary judgment issues remain for the Court to resolve. Branch moves for summary judgment on (1), (2), and (3). DART moves for summary judgment on (4) and (5). Adelman seeks partial summary judgment on (2), (4), and (5).

(1) Whether Branch is individually liable under § 1983 for violating Adelman's First Amendment rights.

(2) Whether Branch is individually liable under § 1983 for violating Adelman's Fourth Amendment rights.

(3) Whether Adelman is entitled to punitive damages against Branch based on her alleged violations of his constitutional rights.

(4) Whether DART is liable for violating Adelman's First and Fourth Amendment rights.

(5) Whether Adelman is entitled to a permanent injunction enjoining the enforcement of DART's Code of Conduct.

## A. Claims against Branch

Section 1983 provides that any person, who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (quoting 42 U.S.C. § 1983). Section 1983 does not create any substantive rights, it simply provides a remedy for the rights designated therein. *Id.* Therefore, an underlying constitutional or statutory violation is a predicate to liability under § 1983. *Id.*

### (1) Violations of First Amendment Rights

The First Amendment of the U.S. Constitution provides, in relevant part, that the government "shall make no law . . . abridging the freedom of speech, or of the press." U.S. CONST. amend. I. The First Amendment protects freedom of speech and freedom of the press, which the Supreme Court has long interpreted to include "an undoubted right to gather news from any source by means within the law." *Houchins v. KQED, Inc.*, 438 U.S. 1, 11 (1978).

Adelman alleges that Branch arrested him for exercising his right to photograph the emergency medical scene in violation of his First Amendment rights. Adelman claims that the evidence establishes that Branch approached—and ultimately arrested—him because "[h]e had a camera," and "[DART] policy states that [officers] can investigate, [officers] can initiate contact." Pl.'s Resp. 5. Branch relies on the defense of qualified immunity.

The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal. *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011). When a defendant raises a qualified immunity defense, the plaintiff has the burden of demonstrating the inapplicability of that defense. *Cantrell v. City of Murphy*, 666 F.3d 911, 918 (5th Cir. 2012). To meet this burden, the plaintiff must show "(1) that the official violated a statutory constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Therefore, the right must already be clearly established at the time of the challenged conduct. *Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014). When considering whether a defendant is entitled to qualified immunity, the Court "must ask whether the law so clearly and unambiguously prohibited his conduct that 'every reasonable official would understand that what he is doing violates [the law].'" *Morgan*, 659 F.3d at 371 (alteration in original) (quoting *al-Kidd*, 563 U.S. at 741).

In her motion for summary judgment, Branch argues that the First Amendment right to film the police or by reasonable extension to photograph emergency medical activity, as Adelman was doing, was not clearly established at the time of Adelman's arrest in 2016. Therefore, Branch contends that Adelman cannot satisfy his burden of establishing that Branch is not entitled to qualified immunity. In support of her argument, Branch relies on the Fifth Circuit's holding in *Turner v. Lt. Driver*. 848 F.3d 678 (5th Cir. 2017)

On February 16, 2017, the Fifth Circuit issued the *Turner* decision, which upheld a district court's dismissal of a § 1983 freedom of speech claim in a police filming incident on the basis of qualified immunity. *Id.* In *Turner*, the plaintiff filmed the Fort Worth police station from a public sidewalk and was detained for questioning after refusing to identify himself. *Id.* at 683-84. The plaintiff was handcuffed, placed in the back of a patrol car, and eventually released. *Id.* The plaintiff sued the police officers who detained him, alleging violations of his First, Fourth, and Fourteenth Amendment rights under § 1983. *Id.* at 684. The defendants moved to dismiss, asserting a qualified immunity defense, and the district court granted the motions. *Id.*

In reviewing the case on appeal, the Fifth Circuit ultimately concluded, "At the time in question, September 2015, neither the Supreme Court nor this court had determined whether First Amendment protection extends to the recording or filming of police." *Id.* at 686. The Fifth Circuit explained:

> We cannot say, however, that "existing precedent . . . placed the . . . constitutional question *beyond debate*" when Turner recorded the police station. Neither does it seem that the law "so clearly and unambiguously prohibited [the officers'] conduct that "every reasonable official would understand that what he is doing violates [the law]." In light of the absence of controlling authority and the dearth of even persuasive authority, there was no clearly established First Amendment right to record the police at the time of Turner's activities. All three officers are entitled to qualified immunity on Turner's First Amendment claim.

*Id.* at 687 (citations omitted). The Fifth Circuit also held that, though the right to film the police was not clearly established at the time of Turner's arrest in 2015, it has been established as of February 16, 2017. *Id.* at 687-88.

The Court finds the facts in the instant case to be analogous to the facts in *Turner*. Even Adelman "acknowledges that *Turner* would likely preclude his First Amendment claim against Branch if this case involved photographing police activity." Pl.'s Resp. 6. Adelman attempts to distinguish this case from *Turner*, arguing that he was not arrested for recording police activity

like the defendant in *Turner*. However, in his own motion for partial summary judgment, Adelman argues, "*Turner* involved nearly identical facts to those here." Pl.'s Br. 25.

The Court finds that the holding in *Turner* applies to the case at hand. At the time that Adelman was arrested for photographing a medical scene attended to by DFR paramedics and DART police, the right to photograph police was not clearly established. Therefore, Branch may assert a defense of qualified immunity. Branch's motion for summary judgment is granted as to Adelman's First Amendment claim against her in her individual capacity.

### *(2) Violation of Fourth Amendment Rights*

Both Branch and Adelman move for summary judgment on the question of Officer Branch's liability pursuant to § 1983 for allegedly violating Adelman's Fourth Amendment rights. However, the evidence demonstrates at least a fact issue regarding the element of reasonableness of Branch's arrest of Adelman. Therefore, both Branch's motion for summary judgment and Adelman's motion for summary judgment are denied as to Adelman's Fourth Amendment claim against Branch in her individual capacity.

### *(3) Punitive Damages*

Branch moves for summary judgment on the issue of whether Adelman is entitled to punitive damages against her based on her alleged violations of his constitutional rights. Punitive damages, however, necessarily involve a question of Branch's subjective motivation and intent, and "summary judgment is rarely proper when an issue of intent is involved." *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1326 (5th Cir. 1996).

The Court finds Adelman's claims for punitive damages against Branch to be weak based on the evidence before the Court. Regardless, there is a fact issue to be resolved by the jury on

Branch's subjective motivation and intent. Therefore, Branch's motion for summary judgment as to the issue of punitive damages is denied.

## B. Claims against DART

### (1) Violations of First and Fourth Amendment Rights

A municipal entity may also be held liable under § 1983 for violating a person's constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). "[M]unicipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Hous.*, 233 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694). Unlike Branch, DART cannot assert a defense of qualified immunity because "[m]unicipalities and officers in their official capacity . . . have no . . . right to be free from suit" under the doctrine of qualified immunity. *Zarnow v. City of Wichita Falls*, 500 F.3d 401, 406 (5th Cir. 2007); *accord Owen v. City of Independence*, 445 U.S. 622, 638 (1980) (holding that qualified immunity defense is not available to municipal defendants).

DART and Adelman both move for summary judgment on whether DART is liable for violations of Adelman's constitutional rights. However, the Court finds that there is a genuine dispute of material fact as to whether or not DART is liable for allegedly violating Adelman's First and Fourth Amendment rights. Therefore, both DART's and Adelman's motions for summary judgment on this point are denied.

### (2) Permanent Injunction

Adelman seeks a permanent injunction prohibiting DART from enforcing its Code of Conduct as a basis to arrest a person exercising his or her First Amendment rights. A permanent injunction is an extraordinary and drastic remedy, not to be granted routinely, but only when the

plaintiff by "a clear showing" carries the burden of persuasion. *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985). To succeed in obtaining injunctive relief, a plaintiff must prove the following elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction does not issue; (3) the threatened injury to the plaintiff outweighs any damage the injunction might cause to the opponent; and (4) the injunction will not disserve the public interest. *Villas at Parkside Partners v. City of Farmers Branch*, 701 F. Supp. 2d 835, 859 (N.D. Tex. 2010). Even when a plaintiff establishes the four elements required for a permanent injunction, the decision to grant or deny it remains in the Court's discretion. *Lemon v. Kurtzman*, 411 U.S. 192, 200-01 (1973).

The Court finds that Adelman has failed to carry his burden of persuasion on at least three of the four elements: (1) a substantial likelihood of success on the merits; (2) substantial threat of irreparable injury if the injunction does not issue; and (3) the threatened injury to the plaintiff outweighs any damage the injunction might cause to the opponent. Therefore, the Court declines to issue a permanent injunction enjoining DART's Code of Conduct. On this point, DART's motion for summary judgment is granted and Adelman's motion for summary judgment is denied.

## IV. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Branch's Motion for Summary Judgment [ECF No. 45], grants in part and denies in part DART's Motion for Summary Judgment [ECF No. 48], and denies Adelman's Motion for Partial Summary Judgment in its entirety [ECF No. 51].

**SO ORDERED.**

SIGNED July 20, 2018.

_____
**KAREN GREN SCHOLER
UNITED STATES DISTRICT JUDGE**